UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Henry Brewington and Virginia Brewington, *individually and d/b/a Levelz Bar & Grill*, <br><br> Plaintiffs, <br><br> v. <br><br> Melvina Devine Davis and City of Myrtle Beach, <br><br> Defendants. | Civil Action No.: 4:17-cv-00387-RBH <br><br><br><br><br> **ORDER** |

Plaintiffs Henry and Virginia Brewington filed this action in state court alleging the City of Myrtle Beach ("the City") and Horry County ("the County") unconstitutionally targeted their nightclub, Levelz Bar & Grill ("Levelz"), as part of a campaign to shut down undesirable businesses in the Myrtle Beach area. Plaintiffs asserted federal claims against the City and the County pursuant to 42 U.S.C. § 1983, and brought state law claims against the City, the County, and their landlord Melvina Davis ("Defendant Davis"). After the City removed the action to this Court, Defendant Davis filed a crossclaim against the City and the County under 42 U.S.C. § 1983.[1]

The matter is now before the Court for a ruling on the City's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons herein, the Court grants the motions as to Plaintiffs' and Davis's § 1983 claims and remands their pendent state law claims to state court.[2]

**Background**

---

[1] The County was subsequently dismissed from this action pursuant to a joint stipulation. *See* ECF No. 81.

[2] The Court decides the motions without a hearing pursuant to Local Civil Rule 7.08 (D.S.C.).

In April 2014, Plaintiffs entered into a five-year lease agreement with Defendant Davis for property located at 515 9th Avenue North in the City.[3] Compl. [ECF No. 1-1] at ¶¶ 3, 9; Lease [ECF No. 16-1].[4] After renovating the existing building, Plaintiffs opened Levelz in July 2014. H. Brewington Dep. [ECF No. 76-3] at p. 30; H. Brewington Aff. [ECF No. 79-2] at p. 1; V. Brewington Aff. [ECF No. 79-3] at p. 1. Shortly thereafter, the Myrtle Beach Police Department ("MBPD") began responding to multiple calls for service involving Levelz; these calls related to the following incidents:

- **October 18, 2014**: Officer Lisa Robertson of the MBPD received an email from an agent of the South Carolina Law Enforcement Division ("SLED") along with a picture indicating pyrotechnics were being served to customers on liquor bottles at Levelz. The information was conveyed to the Fire Marshal, who issued a citation to Mr. Brewington (he subsequently pled guilty and received a suspended fine).

- **1:33 AM on October 19, 2014**: Two MBPD officers were conducting a "keep check" of Levelz due to a large crowd there, and while walking through the club, they found a patron with marijuana and arrested him.

- **2:20 AM on December 14, 2014**: Police from the MBPD, SLED, and the Fifteenth Circuit Alcohol Enforcement Team conducted an operation at Levelz to determine if liquor was being sold after 2:00 AM on a Sunday in violation of S.C. Code Ann. § 61–6–1610. After a bartender served an undercover SLED agent a liquor drink, SLED issued Mr. Brewington an administrative violation. Officers also observed several liquor bottles on tables and patrons pouring drinks at their own will; SLED issued them a citation.

- **3:00 AM on December 14, 2014**: Police arrested a patron who had marijuana. Additionally, an MBPD officer asked Plaintiffs about the strong odor of marijuana at Levelz, and Plaintiffs denied allowing any marijuana or illegal substances to be used at Levelz.

*See* MBPD Investigation File [ECF No. 76-11] at Bates #001–02, 004, 144–47, 149–61; Compl. at ¶¶ 14–16; H. Brewington Dep. at pp. 31–34; V. Brewington Dep. at pp. 32–36.

---

[3] The City is located in the County, which is part of the Fifteenth Judicial Circuit.

[4] Mr. Brewington and Defendant Davis were the actual signatories to the lease. *See* Lease [ECF No. 16-1].

2

Later in the day on December 14, 2014, Officer Robertson began a nuisance file on Levelz. *See* MBPD Investigation File at Bates #004. On December 17, Officer Robertson called Mr. Brewington and told him she needed to meet with him and his wife. *Id.* The next day (December 18), Officer Robertson and two other MBPD officers met with Plaintiffs at Levelz. *Id.*; V. Brewington Dep. at p. 37. Plaintiffs told the MBPD officers that the "night had gotten out of control," that the security company they had hired "was not doing their job," and that they knew people were bringing alcohol inside Levelz and doing "free pours" (though Plaintiffs apparently did not realize this was illegal). *See* MBPD Investigation File at Bates #004. The MBPD officers advised Plaintiffs they were "on the radar for nuisance" because of the events that had occurred on December 14 (i.e., the after-hours sale of liquor and free pours of alcohol at tables).[5] *Id.* at Bates #004–05. However, the police visits continued:

- **3:20 AM on January 18, 2015**: Mrs. Brewington called the MBPD about two men who started a fight inside Levelz that traveled outside into the parking lot; all subjects were gone when the MBPD arrived. Mrs. Brewington stated that one of the men was known to carry a pistol and that both men departed in a car driven by a man known "to do drive by shootings."[6]

- **9:56 PM on January 24, 2015**: An MBPD officer came to Levelz on a golf cart and told Plaintiffs that a shooting in a nearby city (Conway) was somehow linked to Levelz.

- **12:30 AM on January 25, 2015**: Officers cited a passenger in the parking lot behind Levelz for simple possession of marijuana.

- **1:00 AM to 4:30 AM on January 25, 2015**: Multiple MBPD officers (up to ten at a time) conducted multiple walkthroughs of Levelz.

- **1:07 AM on January 25, 2015**: Officers conducted a walkthrough of Levelz

---

[5] Plaintiffs attest that they witnessed other clubs and bars staying open past 2:00 AM on Sunday morning and that Levelz was treated differently than these clubs/bars. *See* H. Brewington Aff. at p. 2; V. Brewington Aff. at p. 2; V. Brewington Dep. at p. 43.

[6] Two days later (on January 20), Officer Robertson called Mrs. Brewington and spoke to her about the January 18 fight. *See* MBPD Investigation File at Bates #005.

> and arrested a patron for marijuana.
>
> - **2:24 AM on January 25, 2015**: Four MBPD officers entered Levelz. One officer went to the men's restroom, one went onto the stage, and the other two went to the back of the building and then onto the stage. The officers left Levelz at 2:27 AM after finding no violations.
>
> - **2:54 AM on January 25, 2015**: Two females were having an argument near the rear entrance of Levelz, and after club staff diffused the argument, the women moved to the front of the club and began a fist fight. MBPD officers yelled for them to stop, but the fight continued with one of the individuals swinging at an officer and striking him in the head. Both parties were arrested and charged with fighting, assaulting a police officer, and resisting arrest.
>
> - **2:54 AM on January 25, 2015**: Officers arrested a person outside the front of Levelz for public intoxication, and also found marijuana during the arrest.

*See* MBPD Investigation File at Bates #002–03, 005, 064–65, 123–43; Compl. at ¶¶ 17–24; H. Brewington Dep. at p. 35; V. Brewington Dep. at pp. 38–40, 44–48.

On January 26, 2015, Mrs. Brewington called Officer Robertson complaining of police harassment and excessive police presence at Levelz.[7] *See* Compl. at ¶ 25; V. Brewington Aff. at p. 2; MBPD Investigation File at Bates #006. Officer Robertson scheduled a meeting with Plaintiffs and City officials for February 2. *Id.*

On January 27, 2015, Mr. Brewington signed a contract of sale with Natalie Litsey, who agreed to purchase Levelz for $150,000 and assume the current lease with Defendant Davis. *See* Contract of Sale [ECF No. 79-1].

On February 2, 2015, Plaintiffs attended the scheduled meeting with City officials (who included Officer Robertson, the Chief of the MBPD, and the City attorney) under the impression that the meeting would address their recent complaints of police harassment. *See* H. Brewington Aff. at pp. 2–3; V.

---

[7] According to Plaintiffs, there were sometimes as many as ten MBPD officers in the building at one time. H. Brewington Aff. at p. 1; V. Brewington Aff. at p. 1.

4

Brewington Aff. at pp. 2–3; H. Brewington Dep. at pp. 39–40; V. Brewington Dep. at pp. 49–50. However, the meeting was not a discussion about their complaints, as Plaintiffs learned that the City desired to shut down Levelz. *Id.* The meeting was unfruitful and concluded with Plaintiffs refusing to voluntarily close Levelz. *Id.*

Thereafter, on February 17, 2015, the State of South Carolina (on the relation of the Solicitor for the Fifteenth Judicial Circuit) commenced a public nuisance action against Plaintiffs pursuant to state law governing the abatement of nuisances. *See State of South Carolina on the relation of Jimmy A. Richardson, II, Solicitor of the Fifteenth Judicial Circuit v. Henry Brewington & Virginia Brewington d/b/a Levelz Bar & Grill*, Case No. 2015-CP-26-1228 [ECF No. 77-7]; *see generally* S.C. Code Ann. §§ 15–43–10 *et seq.* (codifying state procedure for abatement of nuisances).[8]

Prior to the filing of the public nuisance action, the following events occurred. On February 5, 2015, Plaintiffs received correspondence from the Solicitor notifying them "'that the property is reportedly being used for the unlawful possession and sale of controlled substances and for continuous breach of peace'" and that they had "ten days to abate the nuisance."[9] Compl. at ¶ 28; V. Brewington Dep. at pp. 52–53. On February 10, the Solicitor sent the same notice to Plaintiffs' landlord, Defendant Davis. Notice [ECF No. 19-1 at p. 2]; *see also* Compl. at ¶ 29; H. Brewington Aff. at p. 3; V. Brewington Dep. at p. 54; Davis Dep. [ECF No. 91-1] at p. 2. Defendant Davis then informed Plaintiffs

---

[8] Under this law, public nuisance actions are brought "***in the name of the State***"—***not*** the city or county. *See* S.C. Code Ann. § 15–43–20 ("Whenever a nuisance is kept, maintained or exists, as defined in this chapter, . . . the solicitor of the judicial district in which such nuisance is kept . . . may maintain an action in equity in the name of the State, upon the relation of such . . . solicitor . . ., to enjoin perpetually such nuisance, the person conducting or maintaining the nuisance and the owner or agent of the building or ground upon which the nuisance exists."). The nuisance action was ***not*** brought under a city or county ordinance. This fact is critical to understanding and analyzing Plaintiffs' claims in this case.

[9] *See* S.C. Code Ann. § 15–43–120 ("No proceeding against the owner of the real estate shall be commenced hereunder unless ten days' written notice be given by the prosecuting attorney to such owner or his agent and upon his failure thereafter to abate the nuisance.").

5

that she believed they had defaulted on their lease based on the public nuisance notice and that they needed to vacate the premises within ten days. Davis Correspondence [ECF No. 19-1 at pp. 1–3]; *see also* H. Brewington Aff. at p. 3; V. Brewington Aff. at pp. 2–3; H. Brewington Dep. at pp. 42–44.

On February 15, 2015, a man was shot and killed outside Levelz. Compl. at ¶ 31; V. Brewington Dep. at p. 28; MBPD Investigation File at Bates #097–122. The victim had been a frequent patron at Levelz.[10] V. Brewington Dep. at pp. 58–59. Levelz had to immediately close because it was a crime scene. H. Brewington Dep. at p. 65.

As mentioned above, on February 17, 2015, the Solicitor (in the name of the State of South Carolina) filed a verified petition seeking a temporary injunction and a permanent injunction against Levelz for operating a public nuisance in violation of S.C. Code Ann. §§ 15–43–10 *et seq*.[11] *See* Verified Petition/Nuisance Pleadings [ECF No. 77-7].[12] Plaintiffs were served with the petition. V. Brewington Dep. at p. 59. The state circuit court scheduled an emergency hearing for February 20, 2015. H. Brewington Dep. at p. 64. However, before the hearing, Plaintiffs—who were represented by counsel at the time—reached an agreement with the State, and the circuit court issued a consent

---

[10] Mrs. Brewington testified that just before the shooting the victim had been thrown out of Levelz for smoking. V. Brewington Dep. at p. 28.

[11] *See* S.C. Code Ann. § 15–43–10(A) ("A person who erects, establishes, continues, maintains, uses, owns, occupies, leases, or releases any building or other place used for the purposes of . . . repeated acts of unlawful possession or sale of controlled substances, or continuous breach of the peace in this State is guilty of a nuisance; and the building, place, or the ground itself in or upon which the . . . repeated acts of unlawful possession or sale of controlled substances, or continuous breach of the peace is conducted, permitted, carried on, continued, or exists and the furniture, fixtures, musical instruments, and movable property used in conducting or maintaining the nuisance also are declared a nuisance and shall be enjoined and abated as provided in this chapter."); *id.* § 15–43–10(B) ("'[C]ontinuous breach of the peace' means a pattern of repeated acts or conduct which either (1) directly disturbs the public peace or (2) disturbs the public peace by inciting or tending to incite violence.").; *id.* § 15–43–40 ("[E]vidence of the general reputation of the place shall be competent for the purpose of proving the existence of the nuisance.");

[12] Although the suit was initiated by the State of South Carolina, the verification was signed by Chief Warren Gall of the MBPD. *See* ECF No. 77-7 at p. 11.

6

order. *See* Order Granting Motion for Permanent Injunction [ECF Nos. 16-2 & 76-2]. Under the consent order dated February 20, 2015, Plaintiffs agreed to close Levelz for one year and were enjoined from operating a public nuisance anywhere in South Carolina. *See id.* Specifically, the consent order provided:

> 1. Respondents Henry Brewington and Virginia Brewington d/b/a Levelz Bar & Grill, their agents, servants, subordinates, and employees, are enjoined and restrained from operating, using, maintaining, and assisting in the using and maintaining of Levelz Bar & Grill located at 515 9th Avenue North, Myrtle Beach, South Carolina in Horry County as provided by S.C. Code Ann. § 15–43–10, et seq. for a period of 1 year.
>
> . . . .
>
> 3. Respondents and each of them, their agents, servants, subordinates, and employees, are enjoined and restrained from operating, using, maintaining, and assisting in the using and maintaining of any place in the State of South Carolina where a public nuisance exists in violation of S.C. Code Ann. § 15–43–10, et seq.

*Id.* at p. 2. The consent order was signed by the circuit court judge, the Solicitor's attorney, and Plaintiffs' attorney. *Id.*

On March 16, 2015, Mr. Brewington released Natalie Litsey from the contract regarding the sale of Levelz and returned her earnest money deposit based on his belief that he could not perform his part of the contract. H. Brewington Dep. at pp. 52–53. At some point earlier, there had been a three-way telephone conversation among Mrs. Brewington, Litsey, and Officer Robertson; according to Plaintiffs, Officer Robertson dissuaded Litsey from going through with the transaction. H. Brewington Aff. at pp. 3–4; V. Brewington Aff. at p. 3; H. Brewington Dep. at p. 53; V. Brewington Dep. at pp. 65–69. *See also* Audio Transcription of Telephone Conversations [ECF No. 76-5] at pp. 30–42.

7

On February 2, 2017, Plaintiffs filed the instant action in the Horry County Court of Common Pleas against the City, the County, and Defendant Davis seeking only damages and listing the following three causes of action in their complaint: (1) "Tortious Interference of Contract and Action under United States [C]ode, Section 1983," asserted against all defendants; (2) "Violation of Section 1983 United States Code of Law," asserted against the City and the County; and (3) "Breach of Contract," asserted against Defendant Davis. *See* ECF No. 1-1. In making these claims, Plaintiffs alleged, *inter alia*, that Levelz was targeted in the County and the City's campaign to shut down undesirable businesses; that the City and the County interfered with both their lease with Defendant Davis and their contract of sale with Litsey; and that the actions of the City and the County deprived them of their property rights and equal protection under the law. *See id.*

The City answered and removed the action to this federal Court on February 9, 2017. *See* ECF No. 1. Thereafter, the County and Defendant Davis answered. *See* ECF Nos. 9 & 16. Defendant Davis also filed (1) a state law counterclaim against Plaintiffs for breach of contract, (2) a federal law crossclaim against the City and the County under 42 U.S.C. § 1983, and (3) a state law crossclaim against the City and the County for tortious interference with contractual relations. *See* ECF No. 16.

In July 2018, the City filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and for summary judgment pursuant to Fed. R. Civ. P. 56. as to Plaintiffs' claims and Defendant Davis's crossclaims. *See* ECF Nos. 76 & 84. Plaintiffs filed a response in opposition,[13] and the City filed a

---

[13] The same day they filed their response in opposition, Plaintiffs filed a "Motion to Determine Admissibility of Transcripts of Audio Recordings" seeking to reserve the right to submit recordings of three telephone conversations. *See* ECF No. 80. Neither the City nor Defendant Davis have responded to this motion. Notably, the transcribed audio recordings that Plaintiffs seek to submit were already included with the City's motion for summary judgment, and no party has objected to the admissibility of the recordings. *See* ECF No. 76-5. The Court notes it has reviewed the transcript of the recordings in question, and Plaintiffs need not submit them because they are already filed with the Court. Accordingly, the Court finds Plaintiffs' motion is **MOOT.**

8

reply. *See* ECF Nos. 79 & 83. Defendant Davis did not file a response in opposition or any motion for summary judgment.[14]

## **Legal Standard**[15]

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the

---

[14] The Court recently received correspondence indicating Defendant Davis's counsel, Robert Moran, passed away over the holidays. *See* ECF No. 102.

[15] Because the parties have presented matters outside the pleadings and the Court is considering those matters, the Court is treating the motions as ones for summary judgment. *See* Fed. R. Civ. P. 12(d) ("**Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## Discussion

The City moves for summary judgment on Plaintiffs' § 1983 claims by arguing it (1) is immune from suit under § 1983, (2) did not take Plaintiffs' property interest in their contracts, and (3) did not violate Plaintiffs' constitutional rights.[16] ECF No. 76-1 at pp. 10–12. The City moves for summary judgment on Defendant Davis's § 1983 crossclaim for similar reasons.[17]

---

[16] The City also seeks summary judgment based on (1) judicial estoppel and/or res judicata and (2) absolute judicial privilege. *See* ECF No. 76-1 at pp. 6–10. However, the Court is granting summary judgment for the other reasons explained below.

[17] In her § 1983 crossclaim, Defendant Davis alleges that if Plaintiffs' allegations "are found to be true," she "believes that her Constitutionally protected rights in her property, including her right to lease the property to Plaintiffs, or their requested subtenant, have been wrongfully terminated by Defendants City and County, acting in their official governmental capacity, for which Defendant Davis is entitled to damages." ECF No. 16 at pp. 6–7.

The City argues that if Plaintiffs' claims are dismissed, Defendant Davis's crossclaims should be dismissed; and the City has moved for summary judgment on Defendant Davis's crossclaims for this reason. *See* ECF No. 76-1 at p. 12; ECF No. 84. The City's motion for summary judgment regarding Defendant Davis is based on the same

I.     **Applicable Law**

As indicated above, Plaintiffs bring their federal claims against the City pursuant to 42 U.S.C. § 1983.

Section 1983 provides that "[e]very person," who, under color of state law causes the violation of another's federal rights shall be liable to the party injured by his conduct. *See* 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). "A federal civil rights claim based upon § 1983 has two essential elements: '[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

"In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities qualify as 'persons' under the statute, rendering them amenable to suit." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014). "Pursuant to this standard, a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Id.*

**However**, "a municipality may be held liable under 42 U.S.C. § 1983 only for an actual constitutional violation committed by [an] individual official." *S.P. v. City of Takoma Park*, 134 F.3d 260, 272 (4th Cir. 1998) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Without "underlying constitutional violations by any individual, there can be no municipal liability." *Grayson*

---

arguments presented in its motion for summary judgment regarding Plaintiffs. *See* ECF No. 84.

*v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999). Thus, the Court must first consider whether Plaintiffs suffered any actual constitutional violation by any individual officials before determining whether the City is liable under *Monell*. In other words, without a predicate constitutional violation, Plaintiffs cannot maintain a *Monell* claim against the City. *See Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) (explaining a *Monell* claim "require[s] a predicate constitutional violation to proceed" because "municipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual state officer, at least in suits for damages" (internal quotation marks and brackets omitted)); *see generally Albright*, 510 U.S. at 271 ("The first step in addressing any [§ 1983] claim is to identify the specific constitutional right allegedly infringed .").

## II. Analysis

Plaintiffs seek damages for alleged violations of the Due Process, Takings, and Equal Protection Clauses of the United States Constitution under 42 U.S.C. § 1983.[18]

In order for Plaintiffs to establish a prima facie case under § 1983, they must have suffered the deprivation of a federal right, privilege, or immunity by the City's (acting through its individual officials) actions. *See* 42 U.S.C. § 1983. "However, the continued maintenance of an illegal use or a public nuisance is not a protected property interest" and does **not** establish any "constitutional claims

---

[18] Plaintiffs' complaint contains scattershot allegations of unconstitutional actions by the City and generally refers to "the right of property . . . contained in the first ten amendments of the United States [C]onstitution." Compl. at ¶ 61. However, the complaint does allege that Plaintiffs' "constitutional right of property . . . was lost," that their "property interest" was "demolished based on the conduct of the representatives of the Defendant City," and that they "were denied equal protection under the law." *Id.* at ¶¶ 53, 56–57. Moreover, the parties' briefings address due process, takings, and equal protection principles. Having exhaustively scrutinized Plaintiffs' complaint and the parties' briefs, the Court concludes Plaintiffs are asserting due process, taking, and equal protection claims.
  To the extent Plaintiffs allege the City violated the Contracts Clause of the United States Constitution by interfering with their lease with Defendant Davis and their contract of sale with Litsey, *see* U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."), the Fourth Circuit has ruled "there is no cause of action available under § 1983 for violations of the Contract Clause." *Crosby*, 635 F.3d at 641 n.6 (brackets omitted); *see also id.* ("[A]n attempted § 1983 action alleging state impairment of a private contract will not lie." (citing *Carter v. Greenhow*, 114 U.S. 317 (1885))).

to support a § 1983 action." *Trobough v. City of Martinsburg*, 120 F.3d 262, 1997 WL 425688, at *3 (4th Cir. 1997) (argued but unpublished) (citing *Mugler v. Kansas*, 123 U.S. 623 (1887); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987); *Agins v. City of Tiburon*, 447 U.S. 255 (1980)). First, as indicated above, the State brought a public nuisance action against Plaintiffs pursuant to South Carolina law, and the action concluded with Plaintiffs entering into a consent order whereby they effectively admitted to maintaining a public nuisance in operating Levelz. The consent order conclusively establishes that Levelz was a public nuisance.[19] Second, as the City points out, Levelz was not shut down due to actions by the City or its officials. Instead, the State of South Carolina—not the City—was the petitioner and prosecuted the public nuisance action against Plaintiffs that resulted in the closure of Levelz; regardless of this distinction, Plaintiffs still "have no constitutional claims to support a § 1983 action" because they maintained a public nuisance. *See Trobough*, 1997 WL 425688, at *3. Thus, Plaintiffs cannot maintain a § 1983 action.

Moreover, Plaintiffs' individual due process, taking, and equal protection claims fail for the additional reasons explained below.

### A.     Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive

---

[19]     Plaintiffs did not appeal the consent order, which would not have been appealable. *See Rush v. State*, 628 S.E.2d 42, 43 (S.C. 2006) ("A party cannot appeal an order issued with the consent of the party."). Although Plaintiffs do not appear to challenge the effect of the state court consent order, the *Rooker-Feldman* doctrine would bar any such challenge. *See Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) ("The *Rooker–Feldman doctrine* [*see District of Columbia Ct. App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)] bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." (internal quotation marks omitted)).

any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Due process contains both substantive and procedural components. Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014).

To claim a denial of *either* procedural or substantive due process, Plaintiffs must establish they had a property interest. *See Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 826–27 (4th Cir. 1995). Significantly, "no person enjoys a property interest in maintaining a nuisance." *Trobough*, 1997 WL 425688, at *3 (citing *Keystone*, 480 U.S. at 492 nn.20–22); *see Keystone*, 480 U.S. at 492 n.20 ("[N]o individual has a right to use his property so as to create a nuisance . . . ."). Thus, Plaintiffs' due process claim fails because they cannot show the City deprived them of a property right. *See, e.g.*, *Sansotta v. Town of Nags Head*, 724 F.3d 533, 541 (4th Cir. 2013) ("By acting to abate what it believed was a nuisance, the Town simply kept the Owners from using their property in a way that was prohibited by law. Because the law prohibited such use of property, the Owners had no right to use their property in that way. The Town's actions to abate a nuisance were reasonable . . . uses of its police power that did nothing to deprive the Owners of any property right, even if the cottages were rendered valueless.").[20]

Additionally, Plaintiffs cannot establish a violation of *procedural* due process because they were afforded due process of law. *See Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) ("To establish a violation of procedural due process, plaintiffs must show that (1)

---

[20] Again, the State—not the City—was the petitioner seeking to abate the nuisance, although the MBPD police chief signed the verification. Moreover, as noted above, the *Rooker-Feldman* doctrine bars any federal review of the state circuit court's order effectively treating Levelz as a public nuisance. *See, e.g.*, *Shooting Point, L.L.C. v. Cumming*, 368 F.3d 379, 385 (4th Cir. 2004) ("Because the court correctly noted that both the procedural and substantive due process claims necessarily depend upon Plaintiffs['] 'legitimate claim of entitlement' to a 'property interest,' we agree that *Rooker-Feldman* bars federal review of those claims insofar as the state courts have already decided that [issue].").

14

they had property or a property interest (2) of which the defendant deprived them (3) *without due process of law*." (emphasis added)). Plaintiffs were served with verified pleadings giving them written notice of the public nuisance caused by Levelz and the State's intention to abate this nuisance; an emergency hearing was scheduled before the state circuit court; and in fact, Plaintiffs—represented by counsel—ended up entering into a *consent* order whereby they agreed to close Levelz for one year to abate the nuisance. This process was carried out in accordance with state law concerning the abatement of public nuisances, *see* S.C. Code Ann. §§ 15–43–10 *et seq.*[21] Because Plaintiffs were afforded notice and an opportunity to be heard, no procedural due process violation occurred. *See Trobough*, 1997 WL 425688, at *3 ("In situations where a government must act to protect its citizens from a nuisance, the availability of a prompt hearing . . . satisfies the demands of [procedural] due process." (citing *Matthews v. Eldridge*, 424 U.S. 319, 333–35 (1976); *McLean Trucking Co. v. OSHRC*, 503 F.2d 8, 11 (4th Cir.1974)).

Finally, Plaintiffs cannot establish a violation of *substantive* due process because they have not shown that the City's "action falls so far beyond the outer limits of legitimate governmental authority that no process could cure the deficiency." *Sunrise*, 420 F.3d at 328; *see Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995) ("Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement them." (internal quotation marks omitted)). The closure of Levelz resulted from the State's (again, not the City's) prosecution of a public nuisance action, which fell well within the confines of legitimate governmental authority.

For all the above reasons, Plaintiffs' due process claim fails.

---

[21] Plaintiffs do not allege the state nuisance proceeding did not comply with South Carolina law.

### B. Taking Claim

"The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017). "Courts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Keystone*, 480 U.S. at 492 n.22. "As far back as *Mugler v. Kansas*, 123 U.S. 623 (1887), the [Supreme] Court has stated that an exercise of the police power is not unconstitutional merely because it completely destroys some businesses, whether directly or indirectly." *Georgia Outdoor Advert., Inc. v. City of Waynesville*, 833 F.2d 43, 46 (4th Cir. 1987). In *Mugler*, the Supreme Court explained:

> The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner.

*Mugler*, 123 U.S. at 669.

Here, Plaintiffs have no taking claim. "A taking occurs when a state extinguishes a property interest for public use. *See Lucas*, 505 U.S. at 1019. However, a taking does not occur when a state eliminates a nuisance. *Keystone*, 480 U.S. at 489–91; *Lucas*, 505 U.S. at 1023–24." *Trobough*, 1997 WL 425688, at *3. Here, "the City's actions were directed at eliminating a nuisance, and as a result [Plaintiffs'] taking claim must fail." *Id.*

### C. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

16

"This clause is essentially a direction that all persons similarly situated should be treated alike." *Sansotta*, 724 F.3d at 542. "[W]hen no fundamental right or suspect classification is at issue," a plaintiff bringing a claim under the Equal Protection Clause must show the government's actions were not rationally related to a legitimate government interest. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Tri Cty. Paving, Inc. v. Ashe Cty.*, 281 F.3d 430, 438 (4th Cir. 2002).

Because Plaintiffs do not assert the City "has burdened a fundamental right or employed a suspect classification," the Court must "apply the most deferential standard of review to the [City]'s actions under the Equal Protection Clause"—i.e., whether those actions were rationally related to a legitimate government interest. *Tri Cty. Paving*, 281 F.3d at 438–39. In this case, the City's treatment of Plaintiffs was rationally related to the legitimate government interest of eliminating dangers to people and property. Thus, Plaintiffs' equal protection claim fails. *See, e.g.*, *Trobough*, 1997 WL 425688, at *4 (rejecting an equal protection claim for similar reasons).

### D. *Monell* Liability

"[A] municipality cannot be liable in the absence of a constitutional violation . . . ." *Altman v. City of High Point*, 330 F.3d 194, 207 n.10 (4th Cir. 2003); *see Heller*, 475 U.S. at 799 (holding that municipal liability under § 1983 requires a finding of constitutional injury as a prerequisite). As explained above, Plaintiffs' due process, taking, and equal protection claims all fail. Because Plaintiffs have not established any predicate constitutional violations, they cannot pursue a *Monell* claim against the City. Defendant Davis's § 1983 crossclaim —which is explicitly contingent on Plaintiffs establishing a constitutional violation—fails for the same reason. *See, e.g.*, *Wilson v. Flynn*, 429 F.3d 465, 469 n.* (4th Cir. 2005) ("The lack of a constitutional violation also disposes of Wilson's claim against the Town of Ayden."); *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) ("Appellant's claims

against Fairfax County also fail. As there are no underlying constitutional violations by any individual, there can be no municipal liability."); *Ryu v. Whitten*, 684 F. App'x 308, 311 (4th Cir. 2017) ("[B]ecause there was no Fourth Amendment violation, both Ryu's Fourth Amendment claim against Whitten in his individual capacity and his *Monell* claim against Warren County fail."); *Peters v. Caplan*, 672 F. App'x 327, 328 (4th Cir. 2017) ("Peters has failed to allege a deprivation of constitutional right, so his [*Monell*] claim against the City must fail as well.").

The Court will grant the City's motions for summary judgment as to the federal/§ 1983 claims asserted by Plaintiffs and Defendant Davis.

**III.  Pendent State Law Claims**

Because no federal law claims remain, the Court declines to exercise supplemental jurisdiction over Plaintiffs' and Davis's state law claims and will remand them to state court. *See* 28 U.S.C. § 1367(c)(3) (permitting dismissal of pendent state law claims upon dismissal of federal claims); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (recognizing that when "federal claims are dismissed before trial, . . . state claims should be dismissed as well").

## Conclusion

For the foregoing reasons, the Court **GRANTS** the City's motions for summary judgment [ECF Nos. 76 & 84] as to Plaintiffs' and Defendant Davis's § 1983/federal claims against the City and **REMANDS** Plaintiffs' and Defendant Davis's state law claims to the Horry County Court of Common Pleas for further proceedings.[22]  The Court **DIRECTS** the Clerk to mail a certified copy of this Order

---

[22]  Plaintiffs' Motion to Determine Admissibility of Transcripts of Audio Recordings" [ECF No. 80] is **MOOT** for the reasons explained in Footnote 13. Additionally, Plaintiffs' Motion to Exclude the Expert Testimony of Chief Amy Prock [ECF No. 74] is **MOOT**, as it does not affect the Court's analysis.

Also, on January 2, 2019, Plaintiffs filed a Motion to Reopen Discovery for a Period of Sixty Days. *See* ECF No. 101. The discovery deadline was June 30, 2018. *See* ECF No. 67 at ¶ 8 (Fifth Amended Scheduling Order). The City has filed a response in opposition to Plaintiffs' motion. *See* ECF No. 103. "A schedule may be

to the clerk of the Horry County Court of Common Pleas.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
January 8, 2019  R. Bryan Harwell
United States District Judge

---

modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may modify the schedule on a showing of good cause if the deadline cannot be met despite the diligence of the party seeking the extension." *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C.), *aff'd*, 129 F.3d 116 (4th Cir. 1997) (internal citation and some quotation marks omitted). District courts have wide discretion in deciding whether to modify a scheduling order or to reopen discovery. *See Mallas v. United States*, 54 F.3d 773, 773 (4th Cir. 1995) ("[T]he district court has 'wide latitude in controlling discovery.'" (quoting *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 681 (4th Cir. 1986))); *see also Bachman v. M. Lowenstein & Sons, Inc.*, 85 F.R.D. 10, 13 (D.S.C. 1979) ("[W]hen a party is dilatory in pursuing discovery and the time period for discovery has expired, any attempt to reopen discovery must be denied[.]"). Here, Plaintiffs have not demonstrated the diligence required by Rule 16(b), and therefore have not shown good cause justifying modification of the deadline for discovery. Discovery ended six months before Plaintiffs filed their instant motion, and Plaintiffs never previously brought the issues raised in their motion to the Court's attention although they clearly could have. Moreover, this case has been subject to being called for jury selection and/or trial since October 6, 2018. *See* ECF No. 67 at ¶ 14 (Fifth Amended Scheduling Order). Regardless, even assuming *arguendo* that good cause exists, the requested discovery would not affect the Court's above analysis because as previously explained, "the continued maintenance of an illegal use or a public nuisance is not a protected property interest" and does not establish any "constitutional claims to support a § 1983 action." *Trobough*, 1997 WL 425688, at *3. Accordingly, the Court **DENIES** Plaintiffs' Motion to Reopen Discovery [ECF No. 101]. This denial does not preclude Plaintiffs from making a similar request in state court after remand.